Rob Bonta
Attorney General of California
Deborah M. Smith, State Bar No. 208960
Supervising Deputy Attorney General
Alice M. Segal, State Bar No. 288108
Deputy Attorney General
  600 West Broadway, Suite 1800
  San Diego, CA 92101
  P.O. Box 85266
  San Diego, CA 92186-5266
  Telephone: (619) 738-9640
  E-mail: Alice.Segal@doj.ca.gov
*Attorneys for Creditor*
California Geologic Energy Management Division
(CalGEM)

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:** <br><br> **Griffin Resources, LLC,** <br><br>                      Debtor. | CASE NO. 24-12873 <br><br> DC No.: DOJ-1 <br><br> Chapter 11 – Subchapter V <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTION TO DEBTOR'S ELECTION TO BE DESIGNATED AS A SMALL BUSINESS SUBCHAPTER V DEBTOR PURSUANT TO 11 U.S.C. §1182** <br><br> Hearing:     January 15, 2025 <br> Time:        9:30 a.m. <br> Courtroom:  11 <br> Judge       Hon. Jennifer E. Niemann |

**I.    INTRODUCTION**

The Dept. of Conservation, Geologic Energy Management Division ("CalGEM") objects to Griffin Resources, LLC ("Debtor") designation as a small business debtor, filing under Subchapter V, Chapter 11, pursuant to 11 U.S.C. §1182 & §101(51D). CalGEM's objection is made on the grounds that Debtor's aggregate noncontingent liquidated secured and unsecured debts exceed the debt limits for Subchapter V ($3,024,725)[1]. CalGEM asks the Court to strike Debtor's election to

---

[1] Although the debt limit for Subchapter V debtors was previously $7,500,000, on June 21, 2024, the limit expired. Debtor filed for bankruptcy on October 2, 2024, after the debt limit had reverted to $3,024,725.

proceed with the present action under Subchapter V of the Bankruptcy Code.

## II. JURISDICTION

This Court has jurisdiction to consider CalGEM's Objection under 28 U.S.C. §§ 157 & 1334. The statutory bases for relief are Federal Rule of Bankruptcy Procedure rule 1020 and 11 U.S.C. §1182 from the bankruptcy code, 11 U.S.C. §§ 101, et. seq. (the "Bankruptcy Code").

## III. PRELIMINARY STATEMENT

Beginning in 2022, CalGEM issued Order No. 1276A and Emergency Order Nos. 1380 and 1394 to Debtor regarding its maintenance of its 25 wells in the Fruitvale Oil Field. When Debtor refused to comply with these orders, CalGEM was required to undertake the expense of plugging and abandoning the wells. Per California Public Resources Code Section 3226, CalGEM is entitled to recovery for the expense of the work CalGEM performed when Debtor refused to comply with the emergency orders. To date, CalGEM's expenses totaled $27,534,607.46. CalGEM has additional anticipated claims, including anticipated penalties for Debtor's maintenance of Fruitvale and other fields. However, CalGEM's minimum claim alone disqualifies Debtor's designation as a small business under Subchapter V of Chapter 11. Because CalGEM's minimum noncontingent liquidated claim alone is greater than $3,024,725, Debtor cannot carry its burden of proving that its aggregate noncontingent liquidated secured and unsecured debts are less than $3,024,725.

## IV. BACKGROUND

Debtor is an oil and gas operator of stripper wells with principal assets constituting 103-108 oil wells in Kern and Kings Counties. ECF No. 1, p. 1; ECF No. 51, p. 2 ¶ 3. On October 2, 2024, Debtor filed a voluntary petition for chapter 11 bankruptcy, Subchapter V, and checked the box under paragraph 8, stating:

> The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725, and it chooses to proceed under Subchapter V of Chapter 11. . . ECF No. 1, p. 2.

### A. CalGEM Regulates the Production of Oil and Gas in California

CalGEM is a division within the Department of Conservation, a state agency within the California Natural Resources Agency, and a party-in-interest in this Chapter 11 case. CalGEM

regulates the drilling, operation, maintenance, and plugging and abandonment of onshore and offshore oil, gas, and geothermal wells in California. CalGEM has the statutory responsibility of ensuring that operators carry out oil and gas production in a manner that prevents, as far as possible, damage to the health and safety of California's citizens, or damage to the environment and natural resources. Cal. Pub. Res. Code § 3106, subd. (a).

### B. Calgem's Authority to Issue Emergency Orders

CalGEM's state oil and gas supervisor (the "Supervisor") may order remedial work as "necessary to prevent damage to life, health, property, and natural resources." Cal. Pub. Res. Code §§ 3004 & 3224. There are two types of orders: ordinary orders and emergency orders. Ordinary orders are stayed pending administrative and judicial review. Cal. Pub. Res. Code § 3226, subd. (a). Emergency orders are not. Cal. Pub. Res. Code § 3350, subd. (b)(1). Upon determining that an emergency exists, the Supervisor "may order or undertake the actions" that the Supervisor "deems necessary to protect life, health, property, or natural resources." Cal. Pub. Res. Code § 3226, subd. (b). In other words, the Supervisor's determination that an emergency exists provides immediate authorization for CalGEM to undertake whatever actions the Supervisor determines are necessary to address the emergency. *Id*.

### C. Order No. 1267A

Twenty-five of Debtor's wells are located in the Fruitvale Oil Field, all of which the Supervisor deemed deserted in 2022. Declaration of Cameron Campbell ("Campbell Decl."), ¶ 2, Ex. A, Order No. 1267A at p. 10-12. On July 1, 2022, CalGEM issued Order No. 1267A, which in part directed Debtor to plug and abandon all 25 of its Fruitvale Oil Field wells on a non-emergency basis on the grounds that Debtor had deserted those wells. *Id*.[2]

Debtor appealed the order to the Department of Conservation, through the Director's Office of Appeals, where the Director of the Department of Conservation (the "Director") reviewed the nonemergency order to plug and abandon the 25 wells. (Request for Judicial Notice ("RJN"), Ex. 1, July 15, 2024 Order Denying Petition for Writ of Administrative Mandamus ("July 2024

---

[2] Order No. 1267A amended and superseded Emergency Order to Perform Remedial Work, Plug and Abandon Wells, and Decommission Facilities No. 1267. Campbell Decl. ¶2, Ex. A, Order No. 1267A at p. 2. Order No. 1267 required Debtor to plug and abandon all 25 of the Fruitvale wells on an emergency basis. *Id.* at p. 7.

Order"), Attachment A, Notice of Final Decision. On December 7, 2023, the Director affirmed the Supervisor's order to plug and abandon all 25 of the Fruitvale Oil Field wells. *Id*.

Debtor filed a writ of administrative mandamus to appeal the Director's decision to the superior court California, County of Kern, through Case No. BCV-23-100920. This automatically stayed the nonemergency Order 1267A requirement that Debtor plug and abandon all 25 of the wells, pending judicial review. Cal. Pub. Res. Code § 3226, subd. (a).

On July 15, 2024, the court denied the petition for writ of administrative mandamus, upholding the Director's decision under Order No. 1267A. RJN Ex. 1, July 2024 Order. This required Debtor to plug and abandon the 25 wells and decommission its facilities at the Fruitvale Oil Field. *Id*. Debtor then had 10 days after the affirmance of the director's order to commence the work in good faith. Cal. Pub. Res. Code § 3226(a). After those ten days, "[i]f the work has not been commenced and continued to completion, the supervisor may appoint necessary agents to enter the premises and perform the work." *Id*. Although Debtor appealed the superior court decision, the Director's Order No. 1267A was no longer stayed following the superior court decision. Cal. Pub. Res. Code § 3354; Cal. Civ. Proc. Code § 1094.5(g). If the appealing party obtains a writ to further stay the order from the court of appeals, the order could be further stayed. *Id*. As Debtor cannot demonstrate it obtained any such writ, it cannot claim Order 1267A remained stayed after the Court's July 15, 2024 Order denying Debtor's writ. Thus, CalGEM was permitted to begin implementation of Order 1267A beginning July 26, 2024, when Debtor failed to commence work.

**D.      Significant Methane Leaks Prompt Emergency Order No. 1380**

On April 3, 2024, CalGEM noted significant methane readings emanating from a well in the Fruitvale Oil Field as well as from nearby electrical boxes, manholes, and small holes in the grass. Campbell Decl. ¶ 2, Ex B, Order No. 1380 at p. 3. The methane readings were well beyond the threshold at which methane in the atmosphere becomes flammable. *Id*. CalGEM concluded that the source of the methane was a gas pipeline, into which Debtor was venting methane to control pressurization at 16 of the wells connected to it. *Id*.

Beginning December 2019, the pipeline was and remains an "Out-of-Service" production facility. Cal. Code Regs., tit. 14, § 1773.5; Campbell Decl., ¶¶ 7-8: Ex. D, Notices of Violation; Ex.

4
Mem. Of P. &. A. in Supp. of Obj. to Subchapter V Chapter 11 Designation; 1:24bk12873

E, June 26, 2020 Notification. CalGEM regulations bar operators from reactivating an Out-of-Service production facility "unless all needed repairs have been completed and the production facility is in compliance with all applicable testing and inspection requirements." Cal. Code Regs., tit. 14, § 1773.5, subd. (b). Contrary to the December 2019 order, Debtor had been using the pipeline without making the necessary repairs or performing the required inspections and testing on the pipeline. Campbell Decl., ¶¶ 4-6.

On April 18, 2024, CalGEM issued Emergency Order No. 1380 to require Debtor to immediately: (1) Disconnect all wells and production facilities from the pipeline; (2) Flush the pipeline with inert fluid; (3) Blind the pipeline with a physical barrier to cover all openings; (4) At each of the 16 Fruitvale wells connected to the pipeline, install two permanent pressure gauges to ensure accurate pressure monitoring; and (5) Take one of three actions at each of the 16 wells connected to the pipeline. Campbell Decl. ¶ 2, Ex. B, Order No. 1380 at p. 7. Those three actions were: (1) Install subsurface or surface safety devices; (2) Place 10 pound per gallon weight in mud in each of the wells to surface level to prevent depressurization; or (3) Plug and abandon the wells. *Id*. CalGEM ordered Debtor not to remove the pipeline from Out-of-Service status. *Id*.

When CalGEM issues an emergency order to an operator such as Debtor, the operator's appeal of that order does not stay the order. Cal. Pub. Res. Code § 3350. On the contrary, for an emergency order, the operator "shall immediately perform whatever work is required by the order to alleviate the emergency or shall permit the agents appointed by the supervisor to perform that work." Cal. Pub. Res. Code § 3350. Debtor was obligated to immediately begin compliance with Emergency Order 1380. Campbell Decl. ¶10. Debtor failed to do so, necessitating CalGEM to undertake the work, which it did after obtaining a temporary restraining order and preliminary injunction from the superior court, beginning in June 2024. (*Id.*; RJN Ex. 2, June 27, 2024 Order Granting Ex Parte Application for Temporary Restraining Order ("June 2024 Order"); RJN Ex. 3, September 9, 2024 Order Granting Motion for a Preliminary Injunction ("September 2024 Order").)

**E.  Oil Spills at Debtor's Facilities Prompt CalGEM to Issue Order No. 1394**

CalGEM inspected Debtor's Tank Setting (the "Setting") in Debtor's Fruitvale Oil Field facilities and found an immediate threat to human health and the environment. CalGEM observed a

significant quantity of oil on the ground in multiple areas. Campbell Decl. ¶¶11-12. In addition, CalGEM observed leaking tanks, tanks with no or insufficient secondary containment, dirt added on top of standing pools of oil, and several pipes dumping oil into an uncovered culvert. *Id*. CalGEM also observed numerous fire hazards, including electrical lines running through pools of crude oil. *Id*. If left unabated, the conditions could contaminate the Kern River and other waterways. *Id*.

CalGEM issued Emergency Order No. 1394 on May 10, 2024, which required Debtor to: (1) Immediately take all measures to stop leaks of oil, produced water, and other fluids at the Setting; (2) Drain all production equipment at the Setting and remove oil, produced water, and other fluids from the Setting; (3) Remove two tanks at the Setting (Tanks Nos. 7224 and 7226) from service and designate them "Out-of-Service" tanks; (4) Remove a temporary "Baker" storage tank preset at the Setting from service and remove it from the Setting; (5) Disconnect all pumps and electrical cables that are in contact with crude oil; and (6) Remove and dispose of oil refuse from the Setting, including barrels and chemicals, in compliance with state, local, and federal regulations. Campbell Decl. ¶¶ 2 & 11-12, Ex. C, Order No. 1394 at p. 8.

As of July 2, 2024, Debtor had not remediated the conditions or taken any steps to comply with Emergency Order No. 1394. Campbell Decl., ¶¶13-14. Additionally, the ongoing potential for gas leaks caused CalGEM concern for public safety around Debtor's Fruitvale facilities. *Id*. As this was an emergency, CalGEM had immediate authority to begin performing the ordered work that Debtor failed to commence. Cal. Pub. Res. Code § 3226 & 3350. However, CalGEM's communications with counsel for Debtor in June 2024 demonstrated that Debtor did not intend to permit CalGEM to perform the work ordered under Emergency Order 1394. Campbell Decl., ¶¶14-15. CalGEM sought a preliminary injunction from the state court to compel Griffin's compliance. *Id*. CalGEM first obtained an Order Granting Ex Parte Application for Temporary Restraining Order, issued June 27, 2024, and then an Order Granting Motion for a Preliminary Injunction issued on September 9, 2024. RJN Ex. 2, June 2024 Order; RJN Ex. 3, September 2024 Order.

**F.  CalGEM Commenced Operations to Implement Emergency Orders 1380 and 1394 as well as Non-Emergency Order 1267A, For Which CalGEM has a Noncontingent Liquidated Claim.**

When Debtor failed to timely comply with the superior court's order affirming the

Director's Decisions in Order 1267A, California Public Resources Code §3226 authorized CalGEM to complete the plugging and abandoning of Debtor's Fruitvale well and facilities, including its 25 deserted wells on the site.

> Within 30 days after service of an order pursuant to Sections 3224 and 3225, or Section 3237, or if there has been an appeal from the order to the director, within 30 days after service of the decision of the director, **or if a review has been taken of the order of the director, within 10 days after affirmance of the order**, the **owner or operator shall commence in good faith the work** ordered and continue it until completion. **If the work has not been commenced and continued to completion, the supervisor may appoint necessary agents to enter the premises and perform the work**. An accurate account of the expenditures shall be kept. <u>**Any amount so expended shall constitute a lien against real or personal property of the operator pursuant to the provisions of Section 3423**</u>.

Cal. Pub. Res. Code § 3226(a).

The superior court's denial of Debtor's writ, affirming the Director's decision to order the plugging and abandoning of Debtor's 25 Fruitvale wells, permitted CalGEM to take action on July 26, 2024, ten days after the Court's July 15, 2024 decision. Campbell Decl. ¶¶15-16.

Similarly, Debtor's refusal to comply with Emergency Orders 1380 and 1394 promptly after their issuance permitted CalGEM to undertake the actions the Supervisor "deems necessary to protect life, health, property, or natural resources." Cal. Pub. Res. Code § 3226(b). Upon determining Debtor would not comply with the Orders (and in fact intended to prevent access to much of the Fruitvale facilities), and upon obtaining a preliminary injunction from the superior court, CalGEM promptly began undertaking the additional work required by the Emergency Orders, including taking tanks out of service, disconnecting pumps and cables, and removing and disposing of refuse. Campbell Decl. ¶¶15-16.

CalGEM began work on July 2, 2024, including addressing emergency conditions and removing waste from the facilities, preparing well sites for plugging and abandonment, and obtaining permits. Campbell Decl. ¶¶16-17: Ex. F, Summary of Task Orders; Ex. G, Collection of Task Orders 1-5, Ex. H, Invoices submitted to CalGEM through November 8, 2024. Shortly thereafter, CalGEM's contractor began the work of plugging and abandoning six of the wells. *Id*. In early August 2024, CalGEM initiated plans to plug and abandon the 19 remaining wells. *Id*. In early September 2024, CalGEM began post-plugging and abandonment activities, including pump

removal, pipeline locating, and electrical work. *Id* Finally, in late September 2024, CalGEM started site restoration at all 25 of the wells, including pipeline abandonment and waste removal. *Id*.

To date, CalGEM's contractor has completed the plugging and sealing of all 25 Wells. Campbell Decl. ¶18. Crews continue with pipeline abandonment operations and site restoration activities at the well sites. *Id*. Final site restoration inspections are ongoing. *Id*. CalGEM is inspecting and testing well sites to ensure there are no signs of methane emanating from the wells. *Id*. Pipeline abandonment operations are currently paused pending approval from the bankruptcy court to continue. Campbell Decl. ¶19.

CalGEM has incurred $13,641,196.93 to complete the plugging and abandonment work required by Orders 1267A, 1380, and 1394. Campbell Decl. ¶20. CalGEM anticipates it will be required to expend an additional $13,918,975.54 to perform pipeline abandonment operations and final site restoration work. *Id*. CalGEM estimates its total expenditure will be $27,560,172.47. *Id*. CalGEM's contractor confiscated some of Debtor's property during the plugging and abandonment process. Campbell Decl. ¶22. CalGEM received a partial credit ($14,400) from its contractor for the contractor's sale of the necessarily confiscated property and anticipates receiving a further credit ($11,165.01), which will reduce CalGEM's claim. *Id*. Thus, CalGEM's claim against Griffin solely for the cost of plugging and abandoning the Fruitvale facilities will likely total **$27,549,007.46**. *Id*. CalGEM anticipates that its final claim will be substantially larger when including the additional penalties and other expenses CalGEM has incurred related to Debtor's poor management of its oil wells throughout California. Campbell Decl. ¶23.

CalGEM incurred substantial expenses for the work it was forced to complete when Debtor refused to comply with Order No. 1267A (following the superior court writ denial) as well as Emergency Orders 1380 and 1394. Accordingly, Public Resource Code 3226(a) entitles CalGEM to assert a lien against the real or personal property of Debtor. CalGEM's expense to plug and abandon the 25 wells and facilities in Debtor's Fruitvale lease thus constitutes a definitive debt under 3226(a) that has been clearly calculated based on the invoices CalGEM received from its contractors for the work completed. These expenses constitute a statutorily authorized reimbursement owed to CalGEM pursuant to 11 U.S.C. 101(5) & (12).

## V.    ARGUMENT

### A.    Debtor Has the Burden to Prove Eligibility to Proceed Under Subchapter V.

Per Bankruptcy Code Section 1182, a debtor that qualifies under Subchapter V is a "small business debtor," as defined under Bankruptcy Code Section 101(51D). Section 101(51D) defines a small business debtor as one that "has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount **not more than $3,024,725**." 11 U.S.C.A. § 101. (emphasis added). Debt is noncontingent if the "events giving rise to liability occurred prior to the filing of the bankruptcy petition." *In re Nicholes*, 184 B.R. 82, 88 (B.A.P. 9th Cir. 1995). Liquidated claims are those with "ready determination and precision in computation of the amount due." *In re Slack* (9th Cir. 1999) 187 F3d 1070, 1073.

### B.    Debtor Cannot Satisfy its Burden to Prove Eligibility.

Debtors "bear the burden of proving their purported subchapter V eligibility." *In re Vill. Oaks Senior Care, LLC,* 664 B.R. 170, 179 (Bankr. E.D. Cal. 2024). Although the Court normally looks to the debtor's schedule to determine whether debt limits have been met, upon receipt of a good faith objection, "the court may look beyond the schedules to other evidence." *In re Lantzy*, No. BAP.CC-10-1057-KILPA, 2010 WL 6259984, at *3 (B.A.P. 9th Cir. Dec. 7, 2010).

The Court should not confine its evaluation to Debtor's Schedule, which has underestimated many claims, as shown by the disparity between Debtor's Schedule and several proofs of claims. ECF No. 41 at p. 17. Debtor listed over 30 creditors as being owed $0.0. *Id*. at 17-33. One of those companies is Pacific Gas & Electric ("PG&E"). *Id*. at 29. However, PG&E filed a proof of claim for $16,122.09. Claim 10-1. Additionally, Debtor's schedule identified the City of Bakersfield as having a claim worth $439.18. ECF No. 41 at 25.  However, the City's Proof of Claim asserted a claim worth $1,425,716.12. Claim 8-1.

Debtor's schedule identifies CalGEM's claim as $0.0. ECF No. 41 at 26. Although CalGEM's proof of claim is not due until March 31, 2025, and is still being compiled, at a minimum, it has a noncontingent liquidated claim against Debtor for $13,630,031.92 ($13,641,196.93-$11,165.01) with additional pending expenses of $13,918,975.54, totaling $27,549,007.46. Campbell Decl. ¶¶16 & 22: Ex. F-H. This claim will increase to include non-

1 dischargeable penalties accrued by Debtor for the violations it permitted to exist during operation as
2 well as additional expenses for CalGEM's implementation of possible additional orders. *Id*. at ¶23.
3      As numerous creditors still have time to file claims by December 11, 2024 (the deadline for
4 private creditors) and March 31, 2025 (the deadline for government creditors), it is easy to
5 anticipate that Debtor's claims will continue to grow well beyond that estimated in Debtor's
6 schedule. ECF No. 21, Notice of Chapter 11 Bankruptcy.

## VI. CALGEM'S OBJECTION IS TIMELY

8      Bankruptcy Rule 1020(b) permits a party in interest to object to the debtor's designation as a
9 small business debtor under subchapter V of Chapter 11 no later than 30 days after the conclusion
10 of the meeting of creditors under Bankruptcy Code 11 USC § 341(a). *Fed. R. Bankr. P.* 1020. The
11 first meeting of creditors took place on November 8, 2024, making this filing timely.

## VII. NOTICE AND SERVICE

13      CalGEM completed service in accordance with Federal Rules of Bankruptcy Procedures
14 1020(c) and 9014 and the Local Rules of Practice for the United States Bankruptcy Court, Eastern
15 District of California, LBR 9014-1(f)(1).

## VIII. CONCLUSION

17      For the foregoing reasons, the Court should sustain CalGEM's Objection to Debtor's
18 petition electing subchapter V. CalGEM requests the Court sustain CalGEM's objection, strike
19 debtor's election to proceed under Subchapter V of the Bankruptcy Code and grant any and all
20 further relief that the Court deems equitable and just.

21 Dated: December 6, 2024                       Respectfully submitted,

ROB BONTA
Attorney General of California
DEBORAH M. SMITH
Supervising Deputy Attorney General

*/s/ Alice Segal*

ALICE M. SEGAL
Deputy Attorney General
*Attorneys for Creditor
California Geologic Energy Management
Division (CalGEM)*

28 SD2024803705/84852046.docx