**12**

**CLIFFORD & BROWN**
Donald C. Oldaker #166230
1430 Truxtun Avenue, Suite 900
Bakersfield, CA 93301
Telephone: (661) 322-6023
E-Mail:  service.DCO@clifford-brownlaw.com

Specially appearing for Griffin Resources, LLC

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| In re:<br><br>GRIFFIN RESOURCES, LLC, a California limited liability company,<br><br>    Debtor.<br><br> Tax ID#:    90-0661387<br> Address:    5021 Verdugo Way,<br>             Suite 105-413<br>             Camarillo, CA  93012 | Case No. 24-12873<br><br> Chapter 7<br><br>**RESPONSE TO TRUSTEE'S MOTION TO DISMISS AND REQUEST THAT THE COURT RETAIN JURISDICTION OVER ADVERSARY CASE 24-1065**<br><br> Document Control No. DMG-1 |
| GRIFFIN RESOURCES, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CONSERVATION, GEOLOGIC ENERGY MANAGEMENT DIVISION, and DOUG ITO, in his official capacity as STATE OIL & GAS SUPERVISOR<br><br>    Defendants. | ADV. PROC. NO. 24-1065<br><br><br>Date:  May 6, 2026<br>Time:  1:30 p.m.<br>Place:  2500 Tulare St., Fresno, CA<br>        Courtroom 11<br>Judge:  Honorable Jennifer E. Niemann |

Response To Trustee's Motion to Dismiss
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065

1

TO THE HONORABLE JENNIFER E. NIEMANN, UNITED STATES BANKRUPTCY JUDGE, THE CHAPTER 7 TRUSTEE, AND PARTIES IN INTEREST:

GRIFFIN RESOURCES, LLC (herein "Debtor" or Plaintiff") hereby responds to the Trustee's Motion to Dismiss the Debtor's Chapter 7 Case (the "Motion"), and requests that the Court retain jurisdiction over the Debtor's related Adversary Proceeding No. 24-1065 as follows:

## I.     Introduction

Debtor does not oppose dismissal of its Chapter 7 Case.

The Debtor does, however, believe that after weighing the appropriate factors, which include economy, convenience, fairness, and comity, the court should retain jurisdiction over the Debtor's adversary proceeding, Case No. 24-1065.

In summary, retention of the related adversary case is warranted both the ascertain whether, by pursuing enforcement of its pre-petition "Emergency Order to Cease and Desist Operations and Perform Remedial Work No. 1425" immediately after the Debtor petitioned for relief, without first seeking relief from the stay, the California Department of Conservation Geologic Energy Management Division ("CalGEM") violated the Automatic Stay under 11 U.S.C., § 362, and whether based on the conflicting positions taken by CalGEM in first seeking to dismiss Adversary Case No. 24-1065 based on claims that the claims asserted therein should be litigated in State Court, then arguing in State Court that the claims could not be litigated because they were not timely filed there – even though they *were* timely filed in bankruptcy court, CalGEM should be allowed to escape having its actions reviewed at all.

## II.     Statement of Facts

This case was commenced on October 2, 2024 as a Voluntary Petition under Subchapter V of Chapter 11.  Within two months, the California Department of Conservation Geologic Energy Management Division ("CalGEM") challenged the Debtor's Subchapter V election, asserting claims in varying amounts totaling in excess of $27 million related to CalGEM's destruction of one of the Debtor's principal producing assets, its KCL Lease in Bakersfield, CA.

Both pre-petition, and post-petition, the Debtor has vigorously contested CalGEM's destruction of its producing properties, and no final determination has been made.  The Debtor

Response To Trustee's Motion to Dismiss     2
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065

has one state court action, _Griffin Resources, LLC v. California Department of Conservation, et al._ – Kern County Superior Court Case No. BCV-23-100920 which directly addresses claims arising from CalGEM's actions relative to its KCL Lease.

### A.  Emergency Order to Cease and Desist No. 1425

On August 20, 2024, shortly before the Debtor filed its Chapter 11 Petition, and while CalGEM was eliminating the Debtor's KCL wells and facilities, CalGEM served the Debtor with an "Emergency Order to Cease and Desist Operations and Perform Remedial Work No. 1425," directing the Debtor to cease production from its McKittrick and Mt. Poso properties, which collectively accounted for most of the remainder of its income.  The Debtor timely appealed Order 1425 on August 30, 2024, and then filed its Chapter 11 Petition in this matter on October 2, 2024.

### B.  CalGEM Proceeds with Order 1425 Notwithstanding the Stay

Notwithstanding the filing of the Petition, CalGEM forced the Debtor to proceed with the appeal of its "emergency" order 1425 and a three-day hearing took place on November 13, 14 and 15, 2024 before a hearing officer for the Department of Conservation's Director's Office of Appeals. ("DOA.")  CalGEM never sought or obtained relief from the automatic stay under 11 U.S.C., § 363 before proceeding with its appeal proceeding, nor did it seek leave from the Bankruptcy Court to enforce Order 1425's shut down provisions either before or after the DOA's appeal hearing.

The DOA issued its decision upholding CalGEM's "emergency" order 1425 on December 16, 2024.  Since that date CalGEM has resolutely refused to allow the Debtor to produce a majority of its wells, which effectively eliminated the Debtor's remaining sources of income, rendering it impossible for the Debtor to pay debts, including its bankruptcy counsel, and frustrating its ability to propose a Chapter 11 Plan.

### C.  The Debtor Files Adversary Case 24-1065

On December 31, 2024 the Debtor commenced Adversary Proceeding 24-1065. In relevant part the Debtor's Adversary Complaint [ECF-1] sought a judgment declaring that CalGEM's continued enforcement of Order 1425 was  not subject to the 11 U.S.C. § 362(b)(4) exception to the automatic stay; and an injunction against CalGEM continuing to enforce Order

Response To Trustee's Motion to Dismiss          3
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065

1425 without providing a detailed explanation of what steps, if any Griffin was required to take with regard to specific wells and facilities needing specific remediation before being returned to service, and persisting in preventing Griffin from resuming production without justification and without providing adequate due process.  Commencing at paragraph 80 on page 19 of Griffin's Adversary Complaint, Griffin alleged:

- Issuance of Order 1425 (ECF-1 at ¶¶ 71 and 80.)

- A public pronouncement by the Department of Conservation of its decision to shut all of Griffin's operations down.  (ECF-1 at ¶ 72.)

- The conduct of a hearing on Order 1425 between November 13 and 15, 2024. (ECF-1 at ¶¶ 76 -78)

- Griffin's efforts to ascertain what steps it needed to take to resume production. (ECF-1 at ¶ 79.)

- The specific things Griffin was ordered to so under Order 1425. (ECF-1 at ¶ 80.)

- The names of the wells and facilities described in Order 1425.  (ECF-1 at ¶ 81 and 82.)

- The names of the wells and facilities affected by Order 1425 that were not mentioned or described in Order 1425.  (ECF-1 at ¶ 83 and 84.)

- Issuance of the Decision by the Department of Conservation on December 16, 2024 which found certain violations, but not others. (ECF-1 at ¶¶ 85 and 86.)

- That the Decision failed to specify which alleged deficiencies existed at the time the Decision was issued, did not address whether Order 1425 contained specific enough instructions as to remedial efforts Griffin was to take in order to comply with Order 1425, the standard to be applied by CalGEM in assessing whether Griffin had complied with Order 1425, or the procedure to be employed if Griffin maintained it had completed required remediation efforts but CalGEM disagreed, and failed to remedy the deficiency in Order No. 1425 by providing a detailed explanation of the steps Griffin was required to take before CalGEM would allow Griffin's operations to resume (See Pub. Res. Code, § 3225, subd. (b),) thereby failing to supply Griffin with the notice required by law of what it is required to do to lift the restraint on operating its own property.  (ECF-1 at ¶¶ 88 and 89.)

The Adversary Complaint then sought a declaratory judgment that the specific exception to the automatic stay pursuant to 11 U.S.C. § 362 set forth in 11 U.S.C. § 362(b)(4) did not apply because CalGEM could not show, under the Decision, what parts of Order 1425 were being enforced (ECF-1 at ¶ 96,) and request an injunction against further enforcement of ORDER 1425. (ECF-1 at ¶ 101.)

Response To Trustee's Motion to Dismiss　　　　4
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065

Paragraph 102 of the Adversary Complaint specifically alleged:

> 102. Debtor has the right to, and may still exercise, its right to appeal Order 1425 by way of a Petition for Writ of Administrative Mandamus to the Kern County Superior Court. (ECF-1 at ¶ 102.)

Paragraphs 136 and 137 of the Adversary Complaint further allege:

> 136. It may be years before Griffin is able to get before a state appellate court and argue the issues raised at the appeal hearing on Order 1425. The *Penn Terra* court noted: "the bankruptcy court may always issue an injunction tailored to fit those circumstances." *Penn Terra*, 733 F.2d at 274. Unless and until CalGEM specifies which remedial measures it alleges have not been performed, with specificity, and provides the detailed list of steps that Griffin must take before CalGEM will allow it to resume production operations as it is required to do under Public Resources Code section 3225, subd. (b), such that said orders are capable of being enforced, the court should prohibit CalGEM from further enforcing Order 1425 until such appellate rights have been exhausted.

> 137. The Director of the Department of Conservation explicitly stated his intent to shut down Griffin permanently. CalGEM knew that Griffin could not afford to fight CalGEM on the KCL and City of Bakersfield spill issues if CalGEM shut off Griffin's main source of income. (ECF-1 at ¶¶ 136-137.)

Based on the foregoing Griffin requested that the Bankruptcy Court issue an order declaring that further attempts to enforce Order 1425, is not subject to the statutory exception to the automatic stay found at 11 U.S.C. § 362 (b)(4) and that further attempts to enforce Order 1425 on or before consummation and completion of any Subchapter V Plan would violate the automatic stay. (ECF-1 at p. 38.) Griffin concurrently sought injunctive relief restraining enforcement of Order 1425. (*Id*.)

**D. The Debtor Initiates a State Court Review of Order 1425**

On February 10, 2025, after CalGEM asserted the bankruptcy court lacked jurisdiction to determine the validity or enforceability of Order 1425 through Adversary Case No. 24-1065, the Debtor filed a Petition in State Court seeking judicial review of the DOA's decision on February 10, 2025 in *Griffin Resources, LLC v. California Department of Conservation, et al.* – Kern County Superior Court Case No. BCV-25-100480. The Debtor's State Court Petition mirrored the Complaint filed in Adversary Proceeding 24-1065 in almost every respect contending that Order 1425 was invalid because it failed to comply with the legal requirements imposed by

Response To Trustee's Motion to Dismiss and Request that the Court Retain Jurisdiction Over Adversary Case 24-1065

5

California Public Resources Code section 3226, subd. (b) that a Cease and Desist Order "specify the operations that the [Debtor] is required to cease and desist" and "provide a detailed explanation of the steps that the [Debtor] shall take before the supervisor will permit the operations to resume."

### E.      CalGEM Moves to Dismiss Adversary Proceeding 24-1065

On February 19, 2025 CalGEM filed a Motion to Dismiss Griffin's Adversary Complaint alleging that the Adversary Complaint failed to state a claim. [ECF 14] In relevant part CalGEM argued that an operator that appeals from an order issued by CalGEM, who has exhausted the administrative appeals process, may petition the State Court for a writ of administrative mandate under Code of Civil Procedure section 1094.5 (ECF 15 at Page 2.) CalGEM argued that Griffin could and should have filed a Petition with the Superior Court (ECF 15 at Page 14) and asserted that Griffin "*cannot file in bankruptcy court in hopes of seeking a more favorable forum to prevent CalGEM from enforcing Griffin's obligations to comply with state regulations.*" (*Ibid.*)

As support for its Motion to Dismiss the Adversary Complaint, CalGEM asked the Bankruptcy Court to take judicial notice of both Order 1425 and the Decision. (ECF 16)

Griffin opposed the Motion to Dismiss the Adversary Complaint on March 5, 2025. (ECF 21.) Griffin argued that Order 1425 failed to comply with state law requirements that it describe the problems it claimed existed <u>and</u> set forth the steps required to address them, and since it did not do either, it was not a legitimate exercise of the state's police power. (ECF 15 at p. 1.) It further identified the specific wells described in Order 1425 (ECF 15 at p. 11) and explained that if Order 1425 had been issued as an ordinary order, the filing of an appeal would protect Griffin through the termination of the appellate process it has continued through its Petition for Writ of Mandate, but in the case of emergency orders such as Order 1425, an operator may apply for a restraining order if he or she believes that irreparable harm will occur unless enforcement of the order is restrained until the appeal is resolved. (Pub. Resources Code, § 3350, subd. (b)(4).) (ECF 15 at p. 12.) Griffin asked the Bankruptcy Court to take Judicial Notice of its Petition in this matter as support for its Opposition (ECF 23.)

Response To Trustee's Motion to Dismiss
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065      6

CalGEM filed a Reply Memorandum in Support of Motion to Dismiss on March 12, 2025 [ECF 28] in which it recognized and admitted that the Adversary Complaint and the Petition in this matter sought effectively the same relief, and argued

> Further, as Griffin's Opposition demonstrates, Griffin has avenues for pursuing relief within the state court system, which is what the Public Resource Code directs operators to do. Cal. Pub. Res. Code § 3350(b). Griffin filed a complaint in Kern County Superior Court.1 ECF No. 22, Opp'n Req. for Judicial Notice, at p. 1. The California Superior Court, rather than the Bankruptcy Court, is the appropriate venue for appealing a decision from the Director's Office of Appeals. Cal. Pub. Res. Code § 3354(a). Griffin should not be permitted to have two cases proceeding simultaneously on the same issue, giving it multiple bites at the apple.

> Griffin also has had an opportunity to seek injunctive relief from Emergency Order 1425, but not through the Bankruptcy Court. If Griffin believed that it would be irreparably harmed by performance of the work, Griffin had the option of seeking "an order from the appropriate superior court restraining the enforcement of the order pending the outcome of the appeal." Cal. Pub. Res. Code § 3350(b)(4). . . . .

> *Because Griffin has alternative methods to pursue relief through the superior court, and this is more appropriately a matter for the superior court, the Court should decline to provide injunctive relief.* Cal. Pub. Res. Code § 3350(b)(4); ECF No. 17, Ex. A.  (ECF 28 at p. 7.) (Emphasis added.)

CalGEM did **not** argue, and as it did later in the state court proceeding, that Debtor was barred from relief in State Court because its State Court action was untimely. To the contrary, it urged this Court to abstain because Griffin possessed a viable state court alternative. (ECF 28 at p. 7.) At the hearing on CalGEM's Motion to Dismiss Griffin's Adversary Complaint on April 3, 2025, the Bankruptcy Court dropped the Motion to Dismiss from calendar and ordered that Adversary Case No. 24-1065 be stayed pending resolution of the State Action. (ECF 45 and 46)

## F.    Debtor Files a First Amended Petition in State Court

On June 17, 2025, after CalGEM demurred to its original petition alleging that the Petition was untimely, Debtor filed a First Amended Petition[1] (Exhibit "1" to Request for Judicial Notice ("RJN")) in which it alleged:

---

[1] For ease of review Debtor has attached the First Amended Petition as Exhibit 1, without its voluminous Exhibits.

Response To Trustee's Motion to Dismiss
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065

7

- Respondents abused their discretion in issuing Order 1425 and upholding it through the Decision because Order 1425 provides no clear recitation of facts or violations other than for a few wells and facilities (RJN Exhibit 1 at ¶ 29,) and seeking a writ of administrative mandate requiring the Respondents to vacate the Decision and to comply with the requirements of Public Resources Code sections 3225, subd. (a) and subd. (b) and Section 3270.3 by setting for the specific violations, if any, associated with each well or facility subject to Order 1425. (RJN Exhibit 1 at ¶ 52.)

- The limited findings made in the Decision (RJN Exhibit 1 at ¶ 56,) did not support an order shutting down all of Griffin's oil producing activities (RJN Exhibit 1 at ¶ 57,) entitling Griffin to a writ of administrative mandate requiring the Respondents to vacate the Decision and to comply with the requirements of Public Resources Code sections 3225, subd. (a) and subd. (b) and Section 3270.3 by setting for the specific violations, if any, associated with each well or facility subject to Order 1425. (RJN Exhibit 1 at ¶ 58.)

- The determination that an emergency existed was not supported by the findings or evidence (RJN Exhibit 1 at ¶¶ 59-61,) entitling Griffin to a writ of administrative mandate requiring the Respondents to vacate the Decision and to comply with the requirements of Public Resources Code sections 3225, subd. (a) and subd. (b) and Section 3270.3 by setting for the specific violations, if any, associated with each well or facility subject to Order 1425. (RJN Exhibit 1 at ¶ 62.)

- The findings made in the Decision were not supported by the evidence presented (RJN Exhibit 1 at ¶¶ 63-64,) and no evidence whatsoever was presented regarding a majority of Griffin's oil wells at the McKittrick and Mount Poso properties (RJN Exhibit 1 at ¶¶ 65-66,) entitling Griffin to a writ of administrative mandate requiring the Respondents to vacate the Decision and to comply with the requirements of Public Resources Code sections 3225, subd. (a) and subd. (b) and Section 3270.3 by setting for the specific violations, if any, associated with each well or facility subject to Order 1425. (RJN Exhibit 1 at ¶ 68.)

- That the Decision and Order 1425 effectuated a deprivation of rights without due process (RJN Exhibit 1 at ¶¶ 69-71,) a taking of property without compensation (RJN Exhibit 1 at ¶¶ 73-75,) and an excessive and unconstitutional penalty (RJN Exhibit 1 at ¶¶ 77-81,) each of which entitled Griffin to a writ of administrative mandate requiring the Respondents to vacate the Decision and to comply with the requirements of Public Resources Code sections 3225, subd. (a) and subd. (b) and Section 3270.3 by setting for the specific violations, if any, associated with each well or facility subject to Order 1425. (RJN Exhibit 1 at ¶¶ 72, 76 and 82)

Response To Trustee's Motion to Dismiss
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065      8

In addition to seeking a writ of administrative mandate, Griffin also requested issuance of a stay order under Public Resources Code section 3350, subd. (b) (4) staying further enforcement of Order 1425 and the Decision pending the Court's determination of Griffin's Petition

### G.      CalGEM Demurs to the Debtor's State Court Petition as Untimely

On September 17, 2025, CalGEM filed a Demurrer to the Debtor's First Amended Petition (RJN Exhibit 2) asserting that the Debtor's February 10, 2025 Petition in the State Court action was untimely. CalGEM argued that the applicable limitations period for the Debtor to file its Petition was 30 days; that the Debtor's cause of action seeking judicial review accrued on December 16, 2024, i.e. the date on which the DOA issued its Decision; and that the Debtor did not file its petition until February 10, 2024, i.e. 56 days after the alleged accrual date. (RJN Exhibit 3 at pp. 10-11)

CalGEM further argued that the Debtor could not rely on its filing of the Adversary Complaint on Adversary Case 24-1065 as a basis to assert that the time for filing its State Court action was equitably tolled. (RJN Exhibit 3 at pp. 11-12) In making that argument, CalGEM expressly asserted that it was not reasonable for the Debtor to delay filing its State Court action based on its earlier (and otherwise timely) commencement of its Adversary Case. (RJN Exhibit 3 at p. 13.)

The Debtor opposed CalGEM's Demurrer (RJN at Exhibit 4,) arguing first, that under 11 U.S.C., § 108, the time for the Debtor to commence its State Court action was extended until two years after the order for relief in this case, i.e. until October 10, 2026. The extension provided by section 108, is afforded to afford a trustee or debtor in possession a longer period to determine the advisability of further steps in litigation or business transactions to protect the interests of the bankruptcy estate. (*Autoskill, Inc. v. Nat'l Educ. Support Sys*. (10th Cir. 1993) 994 F.2d 1476, 1485 (overruled on other grounds in *TW Telecom Holdings Inc. v. Carolina Internet Ltd*. (10th Cir. 2011) 661 F.3d 495, 497).) (RJN Exhibit 4 at pp. 9 – 10.)

With that in mind, it would be anomalous to allow a government agency to issue an order pre-petition, force the Debtor to prosecute and appeal post-petition, and then claim that neither the

Response To Trustee's Motion to Dismiss
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065

trustee nor the debtor in possession can avail themselves of the extension afforded under 11 U.S.C. § 108, simply because the order from the appeal of the pre-petition order was issued post-petition.

The Debtor further argued that equitable tolling should apply and that the Debtor's filing of the Adversary Case only 15 days after the Decision was issued on the appeal from Order 1425 should toll the statute of limitations in the State Court action. (RJN Exhibit 4 at pp. 10-12.)

CalGEM's Reply (RJN Exhibit 5) argued that that 11 U.S.C § 108 did not apply to extend the limitations period because even though the Debtor's Appeal from Order 1425 was filed pre-petition, the appeal was heard and the DOA Decision issued after the Petition was filed. (RJN Exhibit 5 at p. 3.) CalGEM further reiterated its argument that the Debtors filing of Adversary Case 24-1065 should not equitably toll the deadline to commence the State Court action. (RJN 5 at pp. 4-6.)

### H.　CalGEM Moves to Convert the Case to Chapter 7

On November 19, 2025, CalGEM filed a Motion to Dismiss or Convert this Chapter 11 Bankruptcy to a case under Chapter 7. Debtor partially opposed CalGEM's Motion, asking the Bankruptcy Court to dismiss the bankruptcy case. CalGEM persisted in seeking a conversion to Chapter 7, and on December 17, 2025 the Bankruptcy Court granted CalGEM's Motion and ordered that Griffin's Chapter 11 case be converted to a case under Chapter 7.

On December 18, 2025, the State Court issued ruling on CalGEM's demurrer to Debtor's First Amended Petition sustaining the demurrer with 30 days leave to amend.

On December 19, 2025 the Bankruptcy Court appointed Jeffrey M. Vetter as Interim Chapter 7 Trustee of Griffin's bankruptcy estate. After conducting several Creditor's Meetings, the Trustee has moved to dismiss the Chapter 7 case.

On January 17, 2026, the Debtor filed a Notice of Stay in the state court proceeding, asserting that under 11 U.S.C., § 348, subd. (a) and (d), where a Chapter 11 case is converted to Chapter 7, the conversion date is regarded as the date of the order for relief, and claims arising after the filing of a Chapter 11 proceeding but before conversion to Chapter 7 are regarded as arising immediately before filing the petition. Accordingly, even if CalGEM's argument that 11 U.S.C., § 108 did not apply to the Debtor's ability to seek judicial review while the Debtor was in

Response To Trustee's Motion to Dismiss
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065

Chapter 11, the conversion to Chapter 7 on CalGEM's motion to convert would have the effect of allowing the Trustee the time afforded under Section 108 to decide how to proceed.  (RJN Exhibit 6 at pp. 5-6)

**III.    <u>The Court Has Discretion to Retain Jurisdiction Over the Adversary Case</u>**

Assuming the Court grants the Trustee's dismissal motion, the dismissal of the Debtor's Chapter 7 case does not automatically divest this court of jurisdiction over related cases.  (*In re Caraher* 971 F.2d 327, 328 (9th Cir. 1992))  Rather, the bankruptcy court may, in its discretion, retain the case, subject to considerations of "economy, convenience, fairness and comity in deciding whether to retain jurisdiction over pendent state claims. (Citations)" (*Ibid.*)The bankruptcy Court also retains jurisdiction to determine federal claims, including whether there has been a violation of the Automatic Stay.  (*In re Davis* 177 B.R. 907, 912 (9th Cir. B.A.P. 1995).)

In the present case, there remains a preliminary issue whether CalGEM was entitled to proceed with the appeal of Order 1425, and its subsequent enforcement at all, without first seeking relief from the Automatic Stay. CalGEM's entire "timeliness" argument presupposes that its actions were a legitimate exercise of its police powers and therefore exempt under 11 U.S.C., § 362 (a)(4), but the Debtor's Adversary Case directly challenges that assertion, and was only stayed because CalGEM asserted, successfully, that the State Court should hear issues related to Order 1425.

Having successfully sidestepped this Court's review of its actions, it then undertook to seek dismissal of the Debtor's State Court action under the premise that the action was untimely – an argument that presupposes CalGEM had not violated the stay by proceeding with its appeal.  Under these circumstances, fairness should dictate that CalGEM not be permitted to both "have its cake" by having this court stay claims CalGEM had violated the stay, and then "eat its cake" by having the state court dismiss the Debtor's request for the judicial review CalGEM argued here should take precedence.  Particularly in light of the fact that under 11 U.S.C., § 348, subd. (a) and (d), any challenge to the DOA's Decision would be timely if commenced before October 10, 2026, the Court should exercise its discretion to retain jurisdiction and allow the Debtor to pursue its claims

Response To Trustee's Motion to Dismiss
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065
11

that CalGEM's enforcement of Order 1425 was not exempt from the stay, and to seek review of the DOA's Decision.

Dated: April 22, 2026

**CLIFFORD & BROWN**
A Professional Law Corporation


By:  *Donald C. Oldaker*
Donald C. Oldaker,
Attorneys for Griffin Resources, LLC

Response To Trustee's Motion to Dismiss
and Request that the Court Retain Jurisdiction
Over Adversary Case 24-1065